**KCJ CORPORATION, Plaintiff,**

v.

**KINETIC CONCEPTS, INC., et al., Defendants.**

**No. 98–2047–KHV.**

United States District Court, D. Kansas.

Jan. 13, 1999.

Terry W. Schackmann, Therese M. Schuele, Michael F. Saunders, Teresa A. Woody, Spencer, Fane, Britt & Browne, Kansas City, MO, Stacy Y. Daniels, Spencer, Fane, Britt & Browne, Overland Park, KS, for KCJ Corp.

Lawrence A. Rouse, Marcus N. Bozeman, Vivian W. McLeod, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for Kinetic Concepts Inc., KCI Therapeutic Services, Inc., Don P. Lovetere.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

KCJ Corporation filed suit against Kinetic Concepts, Inc. and KCI Therapeutic Services, Inc., asserting that they willfully infringed its U.S. Patent No. 4,631,767 (the " '767 patent") by manufacturing and selling certain therapeutic low air loss mattresses. This matter comes before the Court on *Plaintiff KCJ's Motion For Summary Judgment As To Infringement* (Doc. # 225) and *Defendants' Motion [For Partial Claim Construction And] For Summary Judgment Based On That Con-struction* (Doc. # 231), both filed October 21, 1998. For the reasons stated below the Court finds that defendants' motion for summary judgment should be sustained and that plaintiff's motion should be over-ruled.

### Summary Judgment Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

In considering a summary judgment motion the Court must view the evidence in the light most favorable to the nonmoving party. *Tom v. First Am. Credit Union*, 151 F.3d 1289, 1291 (10th Cir.1998). Summary judgment may be granted, however, if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505. Thus, " '[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,' summary judgment in favor of the moving party is proper." *Thomas v. IBM*, 48 F.3d 478, 484 (10th Cir.1995) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## Factual Background

On December 22, 1998, the Court entered a *Memorandum and Order* (Doc. # 279) which construed Claim 1 and set forth background facts concerning the patent application and prosecution history. The Court does not repeat its claim construction or factual recitation but incorporates them by reference.

First addressing defendants' motion for summary judgment, the Court finds that the following facts are either uncontroverted or, if controverted, set forth in the light most favorable to plaintiff.

### I. Claim Construction

On December 17, 1998, this Court held a *Markman* hearing and the parties presented argument and evidence concerning the proper construction of disputed terms in Claim 1 of the '767 patent. After considering the evidence produced at that hearing, the Court held that all of the disputed terms had a plain meaning in light of the '767 claims, the '767 specification, and the '767 prosecution history, and it then construed the disputed terms as a matter of law. The Court first addressed Clause (a), which claims "means defining a lower, continuous, inflatable chamber having an air-permeable, flexible upper wall portion." The Court determined that "[a] person of ordinary skill in the art of air bed engineering would read the phrase 'continuous' to mean without interruption and the word 'a' to mean one." The Court therefore determined as a matter of law that the phrase "a lower, continuous, inflatable chamber" claims one non-interrupted inflatable chamber. *Memorandum and Order* (Doc. # 279) at 8, 10–11.

The Court next addressed Clause (b), which claims that the upper wall portion is "constructed for substantially uniform airflow therethrough over substantially the entire plan surface area of said upper wall portion," and Clause (d), which claims that the secondary wall means is "constructed for substantially uniform passage of air therethrough over substantially the entire plan surface area of said secondary wall means." The Court held as a matter of law that "[a] person of ordinary skill in the art of air bed engineering would read 'substantially uniform airflow' to mean airflow that does not substantially fluctuate over time." The Court therefore concluded that "[w]hen added to the words 'over substantially the entire plan surface,' the claim requires that air flow at substantially the same rate at substantially all locations on the surface." *Id.* at 11, 13.

Finally, the Court construed Clause (c), which claims "air-permeable secondary wall means above said chamber upper wall portion and operably coupled with said chamber-defining means." The Court held that "[a] person of ordinary skill in the art of air bed engineering would read 'operably coupled' to mean that two elements work in concert to create an inflatable chamber, e.g. one which is not air tight but can receive and hold air." Therefore the Court concluded that "whatever means is used to operably couple must create an inflatable chamber between the top wall and the secondary wall." *Id.* at 13, 15.

### II. Defendants' Accused Devices

Kinetic Concepts, Inc. ("Kinetics") is a Texas corporation with its principal place of business in San Antonio, Texas. KCI Therapeutic Services, Inc. ("Therapeutic"), a Delaware corporation, is a wholly owned subsidiary of Kinetics which also has its principal place of business in San Antonio, Texas. At all relevant times, Therapeutic has been engaged in the business of marketing and distributing products made by or at the direction of Kinetics. Kinetics makes, offers for sale, rents and/or sells various low air loss mattresses: First Step, First Step Plus, First Step Select, First Step MRS, First Step Tri–Cell, First Step Advantage, and Home Kair DMS II. These mattresses—the accused devices— are patient support devices that are designed to prevent skin breakdown by reducing the interface pressure between the

skin of a bedridden patient and the surface of the support device.[1]

Each of the accused devices includes an inflatable mattress, an air supply unit, and a removable cover sheet. Each inflatable mattress is a one-piece unit which consists of three separately inflatable sections that correspond to the head, body, and legs of the patient. None of the sections have chambers which are interdigitated.

Except on the First Step device, each of the three sections incorporates at least one panel of high air loss (HAL) Gore–Tex, an air-permeable fabric, on the top (patient support surface) of the mattress. On the First Step, this surface has stitched retainers which permit air to permeate the surface.

When defendants' devices are used in accordance with operating instructions provided by Kinetics, a removable cover sheet of HAL Gore–Tex covers the entire patient support surface of each mattress. The cover sheets are to be attached to the mattress by straps, Velcro strips, elastic bands, or normal hospital bed tucking.

Each of defendants' devices is inflated by a blower unit which maintains positive air pressure throughout the entire mattress by continuously blowing air into each section. Air flows from the mattress, through the HAL Gore–Tex panels in the upper wall of the mattress (in the case of the First Step, through the stitched retainers), and creates positive air pressure in the compartment between the inflatable mattress and the removable cover sheet, thus inflating the compartment between the inflatable mattress and the removable cover sheet. In each of the accused devices, air then flows through the removable mattress cover sheet.

## ANALYSIS

### I. Literal Infringement

■ "Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device, i.e., when the properly construed claim reads on the accused device exactly." *Engel Indus., Inc. v. Lockformer Co.,* 96 F.3d 1398, 1405 (Fed.Cir.1996). In this case, the Court's construction of Clause (a) and Clause (b) of Claim 1 prevents a finding of literal infringement as a matter of law.[2] Further, because Claims 2, 3, and 4 are dependent on Claim 1, literal infringement of those claims is also impossible.[3]

Defendants are entitled to summary judgment on plaintiff's claim that they literally infringed Claim 1 of the '767 patent.

1. Kinetics released the various products at different times: First Step and First Step MRS in 1989, First Step Plus in 1990, First Step Select in 1993, First Step Tri–Cell and Home Kair DMS II in 1995, and First Step Advantage in 1998. Plaintiff did not know that defendants had manufactured or marketed the accused devices until Ms. Carr saw some of them at a trade show in 1994. In 1996, Ms. Carr obtained and tested one of the products. These dates are relevant only to the laches defense, which the Court does not reach because of its finding that defendants are entitled to summary judgment on other grounds.

2. The Court construed Clause (a) of Claim 1 as claiming "one non-interrupted inflatable chamber." *Memorandum and Order* (Doc. # 279) at 11. The accused devices are one-piece units with three separate inflatable chambers. Thus Clause (a) of Claim 1 does not read directly on the accused devices.

Also under the Court's construction, Clause (b) of Claim 1 requires "air flow at substantially the same rate at substantially all locations on the surface." The upper walls of the accused devices contain large portions of low air loss fabric, with insets of high air loss fabric.

Plaintiff concedes that the limitations of Clause (a) and Clause (b) are not met by any of the accused devices. Plaintiff argues that the Court's construction would allow a finding of literal infringement, however, as to Clause (c) and Clause (d). Because a finding of literal infringement is precluded by application of the claim construction as to Clause (a) and Clause (b), the Court need not address that argument.

3. Plaintiff contends that the Court's construction is erroneous but concedes that under that construction, it cannot prove literal infringement of Claim 1.

## II. *Doctrine of Equivalents*

An accused device that does not literally infringe a patent claim may infringe under the doctrine of equivalents if "it performs substantially the same function in substantially the same way to obtain the same result." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950) (further quotations and citations omitted). The Supreme Court recently clarified this doctrine, stating that

> Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole. It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety.

*Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 117 S.Ct. 1040, 1049, 137 L.Ed.2d 146 (1997). The essential inquiry is "Does the accused product or process contain elements identical or equivalent to each claimed element of the patented invention?" *Id.* at 1054.

■ Defendants contend that under principles of prosecution history estoppel, plaintiff cannot assert a scope of protection of the '767 patent that would encompass defendants' accused products. Prosecution history estoppel is a legal question for the Court. *Insituform Techs., Inc. v. Cat Contracting Inc.,* 99 F.3d 1098, 1107 (Fed. Cir.1996). "The essence of prosecution history estoppel is that a patentee should not be able to obtain, through litigation, coverage of subject matter relinquished during prosecution." *Haynes Int'l, Inc. v. Jessop Steel Co.,* 8 F.3d 1573, 1577 (Fed. Cir.1993), *clarified on reh'g,* 15 F.3d 1076 (1994); *see also Desper Prods., Inc. v. QSound Labs, Inc.,* 157 F.3d 1325, 1338 (Fed.Cir.1998) ("Amendments made to overcome a prior art rejection can create . . . an estoppel."). In other words, a pat-

entee may not reassert as an equivalent element something given up during the patent application process to overcome the prior art.

■ Plaintiff asserts that defendants' accused devices contain an equivalent of each element of Claim 1, in that they perform substantially the same function in substantially the same way to achieve substantially the same result as the device claimed in the '767 patent. Plaintiff acknowledges, however, that it added Clause (b) and Clause (d) to Claim 1 in response to prior art which the patent examiner cited. Plaintiff disagrees with the Court's conclusion that plaintiff distinguished the prior art on the basis of where air flows (i.e., over substantially the entire surface). Rather, plaintiff cites intrinsic evidence that it added the limitation in Clause (b) and Clause (d) to define how air flows from the upper and secondary walls.

Plaintiff cites *Hilton Davis* for the rule that "[w]here the reason for [a] change was not related to avoiding the prior art, the change may introduce a new element, but it does not necessarily preclude infringement by equivalents of that element." 117 S.Ct. at 1051. But the patent holder bears the burden of establishing the reason for an amendment that was not required to distinguish prior art. *See id.* Plaintiff concedes that it cannot meet this burden because it "does not agree with the Court's interpretation of these claim elements, or that such a non-responsive surplus limitation was added." *Plaintiff KCJ's Reply To Defendants' Memorandum In Response To Plaintiff's Motion For Summary Judgement Of Infringement* (Doc. # 282) filed January 5, 1999, at p. 12.

The Court finds that based on its claim construction and its examination of the file history in connection with that claim construction, plaintiff is estopped from asserting that the accused products—which do not include air flow at substantially the same rate at substantially all locations on

the upper walls—infringe Claim 1 under the doctrine of equivalents. The Schild '009 patent and the Gammons '633 patent claimed mattresses which did allow air to flow through discrete apertures or perforations but did not permit uniform air flow over substantially the entire surface area. The prosecution history reveals that plaintiff's amended patent application distinguished this prior art on the basis of where air flows (i.e., over substantially the entire surface). As a result of this amendment, the patent office issued the '767 patent and plaintiff cannot now reclaim mattresses which do not permit air flow at substantially the same rate at substantially all locations on the surface. Therefore, as a matter of law, plaintiff cannot establish infringement under the doctrine of equivalents.

IT IS THEREFORE ORDERED that *Defendants' Motion [For Partial Claim Construction And] For Summary Judgment Based On That Construction* (Doc. # 231) filed October 21, 1998, be and hereby is SUSTAINED.

IT IS FURTHER ORDERED that *Plaintiff KCJ's Motion For Summary Judgment As To Infringement* (Doc. # 225) filed October 21, 1998, be and hereby is OVERRULED.

IT IS FURTHER ORDERED that *Defendant's Motion For Partial Summary Judgment* (Doc. # 222) filed October 21, 1998, be and hereby is OVERRULED as moot.

IT IS FURTHER ORDERED that all pending motions in limine (Docs. # 268, 269, 270, 271, 272, 273, 274 and 277) be and hereby are OVERRULED as moot.